451 S.E.2d 721

STATE ex rel. STATE FARM FIRE & CASUALTY COMPANY and Nancy S. Barry, Petitioners,

v.

The Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County, West Virginia and Larry Thompson, Respondents.

STATE ex rel. MID–OHIO RESTAURANTS, INC., d/b/a Wendy's Eastern Management Group and Wendy's International Inc., d/b/a Wendy's Old Fashioned Hamburgers Company, Petitioners,

v.

The Honorable John T. MADDEN, Judge of the Circuit Court of Marshall County, West Virginia and Larry Thompson, Respondents.

Nos. 22350, 22351.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 13, 1994.

Decided Oct. 28, 1994.

Landers P. Bonenberger, Michael G. Gallaway, McDermott, Bonenberger, McDermott & Gallaway, Wheeling, WV, for petitioner State Farm.

David A. Mohler, James W. Gabehart, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, WV, for petitioner Mid–Ohio.

Arthur M. Recht, Frank X. Duff, Sandra K. Law, Schrader, Recht, Byrd, Companion & Gurley, Wheeling, WV, for respondents.

NEELY, Justice:

This case arises from two separate petitions, one by State Farm Fire and Casualty Company and Nancy Barry, the other by Mid–Ohio Restaurants and Wendy's International Inc., both seeking writs of prohibition based on the same underlying facts.

State Farm Fire and Casualty Company ("State Farm") and Nancy Barry ask this Court to prohibit appellee Judge John T. Madden of the Circuit Court of Marshall County from allowing their joinder as defendants and to prohibit further proceedings against them in a currently pending civil action by appellee Larry Thompson. In July 1992, Larry Thompson filed a personal injury action alleging permanent and disabling soft tissue injury from a slip and fall incident on the snow outside of a Wendy's Restaurant in Benwood, West Virginia.

In the original complaint, Wendy's International and Mid–Ohio Restaurants (hereinafter jointly referred to as "Wendy's"), were named as defendants. These defendants have also filed a separate writ of prohibition involving unrelated interlocutory orders of Judge Madden in the same action. Specifically, Wendy's seeks a writ of prohibition against Judge Madden's 1 June 1994 order denying a motion to bifurcate the personal injury claim in Count I of the amended complaint from Counts II through VIII involving claims arising out of the adjustment and investigation of Mr. Thompson's suit against Wendy's.[1]

In addition, Wendy's petitions to prohibit enforcement of Judge Madden's 28 April 1994 order regarding designation of Wendy's expert witnesses, barring certain depositions, and seeking answers to interrogatories submitted to Mr. Thompson's experts. Wendy's is also seeking to vacate the 8 September 1993, and 21 September 1993 orders prohibiting testimony of private investigator, Charles A. Sysak, and prohibiting cross-examination of Mr. Thompson regarding alleged .work activities. These issues will simply be addressed *seriatim.*

State Farm is the liability insurer for Wendy's. Nancy Barry is an adjuster with State Farm. One issue concerns Mr. Thompson's second amended complaint of 2 December 1993, in which Judge Madden allowed joinder of State Farm and Nancy Barry as defendants for the torts of bad faith and unfair insurance settlement practices arising out of the adjusting and investigation of Mr. Thompson's personal injury claim against Wendy's. The amended complaint added

---

1. Mr. Thompson's amended complaint against Wendy's joining State Farm and Nancy S. Barry as defendants includes: Count I, directed only to Mid–Ohio Restaurants, Inc., d/b/a Wendy's, alleging negligence in connection with the January 1992 slip and fall incident on the sidewalk outside of Wendy's; Count II, directed to *all* of the defendants, alleging spoliation of evidence due to a lost accident report; Count III, directed to *all* defendants alleging invasion of privacy as a result of the actions of the private investigator, Charles A. Sysak; Count IV, directed to *all* defendants alleging the tort of outrage based on the conduct of Mr. Sysak; Count V, directed exclusively to State Farm and Ms. Barry, alleging bad faith; Count VI, directed exclusively to State Farm and Ms. Barry, alleging Unfair Insurance Practices in violation of *W.Va.Code,* 33–11–4(3), 33–11–4(5)(a) and (b) [1985]; Count VII, directed exclusively to State Farm and Nancy S. Barry, alleging unfair insurance claim practices in violation of *W.Va.Code,* 33–11–4(9)(d), (f), (g), and (m) [1985]; Count VIII, directed to *all* defendants, alleging violation of the Consumer Credit Protection Act, 15 U.S.C. § 1681 *et seq.* as a result of Mr. Sysak's investigation.

claims that Charles A. Sysak, the private investigator hired by Wendy's original counsel in May of 1993, engaged in unethical and illegal surveillance tactics while acting as an agent of Wendy's and State Farm. During the course of surveillance, Mr. Sysak allegedly witnessed Mr. Thompson working at National Auto Paint Company in contradiction of Mr. Thompson's claims of total disability.

Count I of the amended complaint contained the original personal injury claim against Wendy's. Counts VII and VIII were directed to State Farm and Nancy Barry, alone, or in conjunction with Wendy's. Following joinder, Mr. Thompson filed several requests for production of documents seeking State Farm claims file materials relating to Mr. Thompson's slip and fall claim, as well as information about State Farm's adjusting procedures, use of investigators, and surveillance methods.

State Farm filed a motion to dismiss claims against it and a motion to prohibit discovery asserting that precedent prohibits direct actions against liability insurers before resolution of the underlying claim against the insured. The circuit court denied both motions by order dated 13 April 1994. On 28 April 1994, the circuit court denied State Farm's informal written request for review of the decision permitting State Farm's joinder by certified question to the Supreme Court of Appeals. However, the court did order that Mr. Thompson's claims of unfair settlement practices in violation of *W.Va. Code* 33–11–4(9) [1985] be bifurcated from the other claims, and stayed discovery relating to those claims until "further order of the court".[2] The other claims against State Farm were allowed to proceed. State Farm then petitioned this court for a writ of prohibition.

## I.

We find that the circuit court did not abuse his discretion by granting the motion to amend. Under Rule 18(b), *WVRCP* [1978], an insurer may be joined as a defendant with the insured by an injured plaintiff alleging claims of bad faith and unfair insurance practices. However, the circuit court erred by failing to grant State Farm's motion to prohibit discovery. To prevent undue prejudice to Wendy's—the insured in Mr. Thompson's personal injury suit—any discovery or additional actions against the insurer, State Farm, must be stayed pending resolution of the underlying suit. For this reason, we grant as moulded State Farm's petition for writ of prohibition.

State Farm objected to joinder based upon Syl.Pt. 2, *Davis v. Robertson,* 175 W.Va. 364, 332 S.E.2d 819 (1985), *modified, Postlethwait v. Boston Old Colony Ins. Co.,* 189 W.Va. 532, 432 S.E.2d 802 (1993)[3] holding that "[a]n injured plaintiff may not join the defendant's insurance carrier in a suit for damages filed against the defendant arising from a *motor vehicle* accident, unless the insurance policy or a statute authorizes such a direct action." [Emphasis added.] Although there is no express statutory or contractual authorization for joinder in this case, this case, unlike *Davis,* does not involve interpretations of the West Virginia uninsured motorist statute.

In *Davis,* we specifically rejected the possibility of joinder in reliance on another motor vehicle accident case, *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), where we concluded that a direct action for unfair insurance practices under *W.Va.Code* 33–11–4(9) [1985], could be brought by the injured party against the insurer; however, "such implied private cause of action cannot be maintained until the underlying suit is resolved." Syl.Pt. 2, *Jenkins.* The rationale behind both *Jenkins* and *Davis* was to continue the long-standing policy of avoiding unnecessary mention of insurance coverage at trial because of the

---

**2.** Memorandum Order of Judge John T. Madden, Circuit Court of Marshall County, 28 April, 1994.

**3.** Syl. pt. 2, *Postlethwait* modified *Davis* as follows:

"W.Va.Code, [33–6–31(d) (1988)], our uninsured motorist statute, does not authorize a direct action against the insurance company providing uninsured motorist coverage until a judgment has been obtained against the uninsured motorist." Syllabus Point 2, as amended, *Davis v. Robertson,* 175 W.Va. 364, 332 S.E.2d 819 (1985).

possibly prejudicial impact on the jury. *Jenkins*, 167 W.Va. at 608 n. 11, 280 S.E.2d at 259 n. 11 (1981); *Davis*, 175 W.Va. at 368, 332 S.E.2d at 823 (1985).

Today, however, we conclude that merely allowing the joinder of the insurer with the insured would not necessarily inject insurance issues into all such cases. As long as the claims against the insurer are bifurcated from those against the insured, and any discovery or proceedings against the insurer are stayed pending resolution of the underlying claim between the plaintiff and the insured, there should be no undue prejudicial impact on a jury of joining in an original pleading or amending a pleading to assert bad faith or unfair insurance practices counts against an insurer in an original action against an insured. To the extent that the majority of states follow the rule that a party bringing a personal injury action against an insured may not *sue* the insurer until after having obtained judgment against the insured, we are consciously taking a step in a different direction.[4]

Our holding in this regard is based upon Rule 18(b) of the *WVRCP* [1978], which provides:

> (a) *Joinder of claims*—A party asserting a claim to relief as an original claim, counterclaim, crossclaim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party.
>
> (b) *Joinder of remedies; fraudulent conveyances.*—Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, a plaintiff may state a claim

for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgement establishing the claim for money.

We find no reason why an insurance company should be exempt from this rule. By permitting joinder so long as the actions against the insurer are bifurcated from those against the insured in the underlying suit, we are cutting the costs of litigation, particularly as filing fees become a more and more oppressive burden on ordinary working people.

Rule 15, *WVRCP* [1978] provides that judicial consent to amend a pleading "shall be freely given when justice so requires".[5] The circuit court judge made a factual determination that joinder was appropriate in this case, and as we have previously held, the circuit court is vested with sound discretion to grant or refuse leave to amend. *Perdue v. S. J. Groves & Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968). We find no abuse of discretion in the circuit court decision allowing joinder of State Farm and Ms. Barry as defendants in the amended complaint by Mr. Thompson. To the extent *Jenkins, supra, Davis, supra, Robinson v. Continental Cas. Co.*, 185 W.Va. 244, 406 S.E.2d 470 (1991)[6], or *Russell v. Amerisure Ins. Co.*, 189 W.Va. 594, 433 S.E.2d 532 (1993) imply that an action against an insurer for bad-faith and unfair settlement practices cannot be *joined* in the same complaint as the underlying personal injury suit against the insured, they are overruled.

## II.

■ In view of our decision permitting joinder we next address the issue of discovery. In *Robinson, supra*, this court discussed discovery issues in a decision to dismiss an unfair insurance practices claim against an insurer under *W.Va.Code* 33–11–4(9) [1985] pending resolution of the ongoing

---

4. Allan D. Windt, *Insurance Claims and Disputes*, 461, § 9.10 (McGraw–Hill, Inc., 1988).

5. Rule 15(a) provides in pertinent part:
   Amendments—A party may amend his pleading once as a matter of course at any time before a responsive pleading is served ... Otherwise a party may amend his pleading only by leave of the court or by written consent of the

adverse party; and leave shall be freely given when justice so requires....

6. Syl. pt. 2, *Robinson* stated: "[a]n action for bad-faith failure to settle a claim under *W.Va. Code*, 33–11–1 [1974], *et seq.*, and the commencement of formal discovery thereon, are premature when the appellate process has not yet been completed in the underlying action."

appeal of the underlying medical malpractice suit against the insured. Similar to this case, the plaintiff in *Robinson* had instigated extensive discovery which included requests for the insurance company's claim file.

In *Robinson*, we observed that:

[I]t is entirely possible that the contents of the insurance company's claim file would prejudice [the insured] Dr. Biswas's case. Of course, the insurance company or the doctor could move the court to restrict production of documents that would qualify as work or would otherwise be privileged. However, this is a Pandora's box that we would as soon not open.

*Robinson*, 185 W.Va. at 245, 406 S.E.2d at 471. For this additional reason, we grant Wendy's writ of prohibition as moulded and order bifurcation of the personal injury action in Count I, from Counts II through VIII, and we prohibit any discovery pertaining to Counts II through VIII before the final resolution of Mr. Thompson's personal injury claim against Wendy's.

Under Rule 42, *WVRCP* [1978], we find that although joinder was appropriate, separate trials are warranted. Rule 42(c) provides that:

Separate Trials.—The court, in furtherance of convenience or *to avoid prejudice,* or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as given by a statute of this State. [Emphasis added.]

By *sua sponte* order of 15 April 1994, the circuit court did bifurcate the bad faith claim against State Farm from the other claims.

However, on 18 June 1994, Wendy's motion to bifurcate the personal injury claim from all other remaining claims was denied. As a result, State Farm, along with its insured, Wendy's, continues to face litigation and discovery regarding claims of intentional spoliation of evidence, invasion of privacy, torts of outrage, unfair claims settlement practices, and violation of the West Virginia Consumer Credit Protection Act based on conduct arising after Mr. Thompson's slip and fall.

This court has held that the right to order separate trials is within the sound discretion of the trial court. *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981). Furthermore, the circuit court decision is binding "in the absence of a clear showing of abuse of such discretion and in the absence of a clear showing of prejudice to any one or more of the parties." *Holland v. Joyce,* 155 W.Va. 535, 185 S.E.2d 505 (1971). However, we have also held that the overriding concern in deciding whether to order separate trials is providing a fair and impartial trial to all litigants. *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988). The prejudice inherent in allowing the personal injury claim against Wendy's to be tried before the same jury as the additional claims against State Farm and Wendy's, is such that the circuit court's refusal to bifurcate was a clear abuse of discretion.

Allowing the additional claims against State Farm to proceed would necessarily entail discovery of State Farm files that would undoubtably prejudice Wendy's ability to defend itself against Mr. Thompson's original negligence claim. Unless Counts II through VIII are tried separately from Count I of the amended complaint, the jury would be inundated with details pertaining to the insurance coverage of Wendy's. The jury would be confronted with the allegedly egregious and intentional actions of State Farm, acting in concert with Wendy's through its private investigator, Mr. Sysak, and then the *same* jury would be expected to reach an unbiased decision in Mr. Thompson's personal injury claim.

We have repeatedly held that a jury should not be informed of the insured or uninsured status of a defendant because disclosure might influence the jury to decide the underlying claim based on the fact of insurance coverage, and not on the merits of the case. *Hewett v. Frye,* 184 W.Va. 477, 401 S.E.2d 222 (1990); *Davis v. Robertson,* 175 W.Va. 364, 332 S.E.2d 819 (1985); *Graham v. Wriston,* 146 W.Va. 484, 120 S.E.2d 713 (1961); *overruled on other grounds, Bradley v. Ap-*

palachian Power Co., 163 W.Va. 332, 256 S.E.2d 879 (1979). In view of the potential prejudicial effect on Wendy's of allowing continued discovery relating to Counts II through VII, and the fact that the insurance issue is inextricably intertwined in the aforementioned counts, we order bifurcation and grant Wendy's writ of prohibition as moulded.

## III.

■ Wendy's also seeks to prohibit enforcement of the circuit court's order of 28 April 1994 denying Wendy's request to designate their own experts and depose Mr. Thompson's experts. Following a scheduling conference on 19 March 1993, the circuit court issued a scheduling order establishing that the original deadline for expert designation was 17 August 1993, and the original discovery deadline was 1 October 1993. However, Wendy's prior counsel made no request for a deadline extension before the expiration of the original scheduling order's deadlines.

Rule 16(e), *WVRCP* [1992] provides: *"Pretrial orders.* After any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action *unless modified by a subsequent order.* The order following a final pretrial conference shall be modified only to prevent manifest injustice." [Emphasis added.] Wendy's lawyers assert that they have the right to designate three expert witnesses: a rheumatologist, an economist, and a vocational consultant.[7] Although Wendy's subsequently obtained new counsel, we agree with the circuit court in his 28 April 1994 order holding that, "new counsel does not stand in any better position in making [a motion] than would former counsel."

■ Wendy's former counsel was prepared to keep the original January 1994 trial date, and apparently made a strategic decision that the experts Wendy's now seeks to present were not necessary by allowing the deadline to pass without taking action. Contrary to assumptions by Wendy's counsel, the scheduling order regarding the personal injury claim in the original complaint was not automatically vacated by the court based upon the new claims added by the amended complaint. The mere fact of retaining new counsel, in the absence of incompetent prior representation, does not constitute "manifest injustice" under Rule 16, *WVRCP* [1992] such that it entitles Wendy's to relief from the court's previously uncontested deadlines. The original discovery deadlines regarding Mr. Thompson's claims of disability and lost future earnings are equally binding on Wendy's new counsel.

At the time the circuit court granted Mr. Thompson's motion to file an amended complaint, there was no discussion of an amendment to the original scheduling order pertaining to the slip and fall claim. Of course there may be new discovery deadlines issued by the court with respect to the new claims added in the amended complaint. However, we find that the circuit court was acting within his discretion under Rule 16(e), *WVRCP* [1992] by refusing to allow Wendy's to designate experts after the expiration of the deadlines established in the scheduling order.

## IV.

■ Wendy's asserts that the circuit court exceeded his legitimate powers by not requiring Mr. Thompson to provide full and complete answers to the third set of interrogatories and by foreclosing a discovery deposition of Mr. Thompson's expert witnesses, an economist, a urologist, and a vocational expert. "Under Rule 26(b)(4) of the West Virginia Rules of Civil Procedure, there is no absolute right to take a discovery deposition of the other party's testifying expert witness. The rule requires interrogatories to be utilized first and leaves to the discretion of the circuit court whether further discovery is warranted." Syl.Pt. 9, *King v. Kayak Mfg. Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989).[8]

---

7. Wendy's intends to use these experts to present evidence relating to the initial personal injury claim.

8. Rule 26(b)(4) of *WVRCP* provides, in pertinent part:

In the 28 April 1994 circuit court order, Judge Madden jointly addressed both issues, finding that the Rule 26(b)(4), *WVRCP* [1988] information provided to Wendy's on 17 August and 18 August 1993, and 11 March 1994 failed to satisfy the requirements of the rule. As a result, Mr. Thompson was given until 1 June 1994 fully to supplement his designation of experts by full compliance with Rule 26(b)(4), *WVRCP* [1988]. The circuit court stated that *only* upon Mr. Thompson's failure fully and completely to supplement the prior information given, would the circuit court permit Wendy's to depose Mr. Thompson's experts.

On 2 June 1994, Wendy's received Mr. Thompson's Rule 26(b)(4), *WVRCP* [1988] supplementation. Other than accusing Mr. Thompson of withholding important discovery information, Wendy's made no allegations and presented no evidence that suggests the supplemental information supplied on 2 June 1994 was inadequate. If Wendy's counsel believes that Mr. Thompson provided insufficient answers to interrogatories served under Rule 26(b)(4)(A)(i), *WVRCP*, [1988] the proper procedure is to file a motion to compel more complete answers pursuant to subdivision (A)(ii). *Nutter v. Maynard*, 183 W.Va. 247, 395 S.E.2d 491 (1990). At the time of the circuit court order at issue, no motion to compel had been filed.

For the aforementioned reasons, we find no abuse of discretion with respect to the 28 April 1994 order denying Wendy's request to depose Mr. Thompson's experts.

## V.

■ Finally Wendy's argues that the circuit court abused his discretion by prohibiting Charles A. Sysak, the private investigator, from testifying about Mr. Thompson's alleged work activities at National Auto Paint Company, and precluding Wendy's cross-examination of Mr. Thompson on this issue.[9] Wendy's claims that this testimony is necessary to rebut Mr. Thompson's allegations that he is permanently and totally disabled as a result of his slip and fall at Wendy's. In addition to a physician's report supporting Mr. Thompson's claim of permanent disability, Mr. Thompson personally testified that he is unable to work as a direct result of his January 1993 fall at Wendy's.

Mr. Sysak, in the course of his surveillance of Mr. Thompson, allegedly observed Mr. Thompson entering National Auto Paint Company in the morning, and leaving each evening for eight days in a row in May 1993. Furthermore, Wendy's claims that Mr. Sysak witnessed Mr. Thompson in the act of working and took photographs of this activity. The circuit court found that the investigator, while acting as an agent of Wendy's counsel, engaged in illegal and unethical surveillance of Mr. Thompson. As a result, the circuit court forbade any additional illegal surveillance and issued the sanctions now at issue.

Wendy's asserts that Mr. Sysak's testimony is crucial, and the ability to cross-examine Mr. Thompson on this issue is equally important. We find that the circuit court did abuse his discretion by prohibiting the testimony of Mr. Sysak, and by totally foreclosing Wendy's from cross-examining Mr. Thompson regarding his alleged activities at National Auto Painting Company.

Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows

(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

(ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.

9. Until this action, Wendy's never filed any objections or exceptions to the circuit court's 21 September 1993 or the 8 September 1994 orders granting Mr. Thompson's motions for protective order and sanctions.

■ The circuit court was acting within his discretion by issuing sanctions against Wendy's in response to the illegal behavior of its agent, Mr. Sysak. However, the scope of those sanctions is troublesome. The circuit court referred to the sanctions as an effort to "eliminate the use of the fruit of the poison-ness [sic] tree". (Circuit Court of Marshall County Memorandum Order, 8 September 1993) The purpose was to preclude use of information gained by illegal or unethical activities. However, the exclusionary rule is not usually extended to civil cases. *See County of Henrico v. Ehlers*, 237 Va. 594, 379 S.E.2d 457 (1989) (expressly declining to extend the Fourth Amendment exclusionary rule to civil cases).[10]

■ To the extent that the circuit court's order prevents Wendy's from cross-examination of Mr. Thompson regarding his activities at National Auto Paint Company where he *legally* was observed by Mr. Sysak, we find the circuit court abused his discretion.

There is no constitutionally protected right to swear falsely. *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *cert. denied, Havens v. U.S.*, 450 U.S. 995, 101 S.Ct. 1697, 68 L.Ed.2d 195 (1981). ("It is essential ... to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth."); *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *State v. Layton*, 189 W.Va. 470, 432 S.E.2d 740 (1993). Having taken the stand, Mr. Thompson is under an obligation to speak truthfully. Obstructing the defendants' ability to cross-examine Mr. Thompson in the event that he chooses to testify falsely is without precedent.

■ Placing an absolute bar on Mr. Sysak's testimony was also an abuse of discre-

---

**10.** In criminal law, the exclusionary rule (a big part of which is the "fruit of the poisonous tree" doctrine) requires the suppression of evidence obtained directly and indirectly in violation of a defendant's constitutional rights. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (Fourth Amendment violation); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (Fifth Amendment violation). Traditionally, courts limited the exclusionary sanction to criminal proceedings, refusing to apply it in the civil context. *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule inapplicable in civil action brought by the Internal Revenue Service); *Immigration and Naturalization Service v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (exclusionary rule inapplicable in administrative deportation hearings); *County of Henrico v. Ehlers, supra; Herndon v. Albert*, 713 S.W.2d 46 (Mo.App.1986); *Baxter v. Texas Dept. of Human Resources*, 678 S.W.2d 265 (Tex.App.1984).

Deterrence of unconstitutional conduct by state actors has emerged as the primary reason for the exclusionary rule. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Application of the exclusionary rule in the criminal context imposes substantial costs to society as unavoidable side-effects of the deterrent function. It makes reliable and probative evidence unavailable; it impedes the truthfinding process; it risks encouraging disrespect for law by seemingly focusing on procedure rather than

the pursuit of truth and justice. *County of Henrico, supra,* 379 S.E.2d at 462; *Stone, supra,* 428 U.S. at 490–91, 96 S.Ct. at 3050–51; *Janis, supra,* 428 U.S. at 447–48, 96 S.Ct. at 3028–29. However, the Supreme Court has decided that the societal costs of the exclusionary rule are outweighed by the value of providing greater protection for the constitutional rights of citizens.

However, even under the exclusionary rule, evidence illegally obtained is admissible when used solely to impeach the defendant's testimony at trial. *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (voluntary, uncoerced statements obtained in violation of *Miranda* could be used to impeach a defendant's testimony at trial); *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (continued police questioning after suspect invoked right to counsel in violation of *Miranda* could be used for impeachment purposes against a defendant testifying at trial); *State v. Rummer*, 189 W.Va. 369, 432 S.E.2d 39 (1993); Syl.Pt. 4, *State v. Goodmon*, 170 W.Va. 123, 290 S.E.2d 260 (1981). Evidence obtained in violation of the Fourth Amendment may not be used to impeach other defense witnesses, it may only be used to impeach testimony of the defendant. *James v. Illinois*, 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990). Although we decline to rule on a general question concerning the applicability of the exclusionary sanction outside the criminal context, we find that once Mr. Thompson chooses to testify and raises an issue that contradicts the illegally obtained evidence, the illegally obtained evidence may then be admitted for impeachment purposes only.

tion by the circuit court. It is within the circuit court's discretion to exclude evidence obtained illegally by Mr. Sysak. Such evidence may include the credit check in violation of 15 U.S.C. § 1681, allegedly run on Mr. Thompson by Mr. Sysak, and information obtained as a result of Mr. Sysak's *conversation* with Mr. Thompson made in violation of ethical prohibitions on direct contact by a lawyer, or in this case, the lawyer's agent, with adverse parties represented by counsel.

However, there is clearly no taint of illegality attached to Mr. Sysak's visual surveillance, which he conducted by sitting in a car parked on a public street near National Auto Paint Company. Mr. Sysak should be permitted to testify as to any lawfully observed activities by Mr. Thompson which occurred in full view of the general public. Even in the criminal context, a person in his own home is not entitled to Fourth Amendment protection when he conducts his activities in a manner that can be seen by the unaided viewing of a person lawfully standing outside. *United States v. Taborda,* 635 F.2d 131 (2d Cir.1980).

Mr. Thompson had no reasonable expectation of privacy in such a public setting, and Mr. Sysak violated no law by *observing* him. Exclusion of such testimony serves no legitimate deterrent purpose. In the circuit court order, the court viewed Mr. Sysak's direct contact with Mr. Thompson, under false pretenses during the course of his investigation, as the most egregious of his infractions because Mr. Sysak was hired by Wendy's counsel. Under the *West Virginia Rules of Professional Conduct,* Rule 4.2 [1990], a lawyer is precluded from communicating with an adverse party represented by counsel unless he obtains the consent of the opposing lawyer.

Although the contact in this case was made by an investigator, under Rule 5.3 [1990], the lawyer has a duty to assure that the conduct of non-lawyer assistants is consistent with the professional obligations of lawyers. Failure to meet this duty can result in disciplinary actions against the lawyer for his agent's actions. However, as we stated in *Dent v. Kaufman,* 185 W.Va. 171, 175,

406 S.E.2d 68, 72 (1991), "[i]t is important to remember that what we are dealing with here are rules of professional conduct, not rules of evidence." The purpose of Rule 4.2 [1990], is to prevent lawyers from exploiting adverse parties when they are unaccompanied by counsel. *Id.* at 174, 406 S.E.2d at 72. Rule 4.2 [1990] is not intended to protect a party from exposure to prejudicial facts.

Therefore, we decline to adopt a *per se* rule of exclusion as an appropriate sanction for professional misconduct by a lawyer or his or her agent. *See United States v. Guerrerio,* 675 F.Supp. 1430 (S.D.N.Y.1987) (holding that violation by a prosecutor of disciplinary rule 7–401(A)(1), functionally identical to Rule 4.2, does not compel suppression of evidence and that application of the exclusionary rule for disciplinary violations is improper). Although in *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959) we held that the power to discipline a lawyer for professional misconduct either in his or her relations with clients outside of court or in judicial proceedings falls within the general supervisory power of the court, in this case, the circuit court overreached his authority. We do not see the need to penalize the defendant by excluding Mr. Sysak's testimony as to events he *observed* in conformity with both legal and ethical restrictions. Instead, a more appropriate sanction would simply ban references to any information obtained as a result of Mr. Sysak's unethical contact with Mr. Thompson. The issuance of broad sanctions without giving full consideration to a more narrowly drawn order constitutes an abuse of discretion.

This Court notes that under the rubric of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979) prohibition is a proper remedy in this case. In *Hinkle* this Court stated:

> In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohi-

bition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

Syl.Pt. 1, *Hinkle, supra.*

For the above stated reasons, the writs of prohibition by both parties are granted as moulded.

Writs granted as moulded.

BROTHERTON, C.J., did not participate.