**210**

Ira LIGHT and Nila Light,
his wife, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
a corporation, Defendant.

No. Civ.A. 5:95–0090.

United States District Court,
S.D. West Virginia.

Sept. 1, 1998.

_____

Kevin Burgess, Hamilton, Burgess, Young & Pollard, for plaintiff.

Brent K. Kesner & Ellen R. Archibald, Kesner, Kesner & Bramble, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HALLANAN, Senior District Judge.

Currently pending before the Court is the Motion of Allstate Insurance Company for Reconsideration and Renewed Motion for Bifurcation and Stay. Having reviewed said motion, as well as all memoranda and supplemental memoranda, both in support and opposition, as well as all relevant case law, the Court is now prepared to issue its ruling.

### Statement of Facts

On January 27, 1993, a motor vehicle operated by Ira Light was struck head on by a motor vehicle owned by Juanita Keller and driven by her son, Shawn Keller. The Kellers were "at fault" for the accident. As a result of the collision, both Ira and her husband Nila Light, who was a passenger, sustained serious injuries. At the time of the accident, the Lights had a motor vehicle insurance policy with Allstate which included underinsured motorist coverage in the amount of $100,000. The Kellers were insured by State Farm Mutual Automobile Insurance Company (hereinafter State Farm).

On July 7, 1993, the Lights negotiated a settlement with State Farm for the full policy limit of $100,000. The Lights then executed a release discharging the Kellers from any further claims arising out of the accident. Subsequently, the Lights notified Allstate of the settlement. Thereafter, the Lights submitted a claim to Allstate for their underinsured motorist coverage, as Mrs. Light's damages exceeded the amount recovered from State Farm. Allstate refused to pay the underinsured motorist coverage, alleging it had not consented to the Lights' settlement with State Farm.

The underinsured motorist provision contained in the Allstate policy included the following exclusion: "Allstate will not pay any damages an insured person is legally entitled to recover because of ... bodily injury or property damage to any person if that person or that person's legal represen-

tative makes a settlement without our written consent." The policy further stated: "When we pay, an insured person's rights of recovery from anyone else becomes ours up to the amount we have paid." The Lights contend they notified Allstate of their intent to settle with State Farm and were not informed they needed Allstate's consent to do so. The Lights further contend that after having been alerted to their settlement plans Allstate never attempted to intervene. In response, Allstate maintains that it was unaware of any forthcoming settlement between the Lights and State Farm.

As a result of Allstate's failure to pay the uninsured motorist claim, the Lights filed a complaint alleging breach of contract by Allstate. In addition, the Lights also brought a claim against Allstate for unfair settlement practices pursuant to W.Va.Code § 33–11–4(9) (1985).

Allstate, however, asserts it was the Lights who breached the policy by settling with State Farm without Allstate's consent. In addition, Allstate has asserted that in the event it were to pay underinsured motorist benefits, the settlement and release executed by the Lights prejudiced Allstate's subrogation rights against the Kellers. Therefore, Allstate contends that the Lights are not entitled to the underinsured motorist coverage.

In contrast, the Lights assert that even had they committed breach, said breach was inconsequential because they were never advised by Allstate of the consent-to-settle provision in their policy. The Lights further contend that Allstate's subrogation rights were not prejudiced by the settlement and release as the Kellers were apparently "judgment proof." Therefore, the Lights assert that they are entitled to underinsured motorist coverage under their policy.

### Procedural History

On or about October 3, 1995, Allstate filed its original motion seeking bifurcation of the Lights' contract and unfair settlement practices claims. The Court, finding the principles of mandatory bifurcation espoused in *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), inapplicable to the action at bar, denied said motion by order entered November 7, 1995.

Subsequent to this Court's initial ruling on Allstate's motion to bifurcate, the United States Court of Appeals for the Fourth Circuit was presented the opportunity to address the issue raised by said motion. In *Maher v. Continental Casualty Co.,* 76 F.3d 535 (4th Cir.1996), the court was confronted with a situation wherein the plaintiff had brought both a first-party claim for breach of contract and a claim alleging violation of the West Virginia Unfair Claims Settlement Practices Act together in the same action. Upon review, the Fourth Circuit concluded that *Madden* required the claims be bifurcated.

The Fourth Circuit declared that "[a]lthough the underlying claim in the instant case ... is a "first-party" action by Maher against his own insurer instead of a third-party action by an outside claimant, the sweeping, unequivocal language used in *Madden* convinces us that it would apply with equal force here." *Maher,* 76 F.3d at 544. However, as the Fourth Circuit was merely postulating as to the probable ruling of the Supreme Court of Appeals of West Virginia (hereinafter Supreme Court of Appeals) if and when faced with a analogous factual scenario, this Court was concerned over the possibility of conflict between the courts. Accordingly, to ensure that the Fourth Circuit had not perhaps misinterpreted a novel point of West Virginia law, and to more importantly afford the Supreme Court of Appeals the opportunity to issue a definitive ruling, this Court ordered that Allstate's motion be stayed pending resolution of a certified question to the state's highest court.

### Mandatory Bifurcation and the Certified Question

After reviewing the parties proposed questions for certification, this Court, on July 2, 1997, certified the following question to the Supreme Court of Appeals:

In a case in which the plaintiffs assert an insurance contract claim for first-party underinsured motorist benefits, and a "bad

faith" claim pursuant to the Unfair Claims Settlement Practices Act arising out of the contract claim, is it mandatory, under *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), for the trial court to bifurcate the claims and stay the "bad faith" claim pending resolution of the contract claim?

However, in an effort to more clearly address the issues presented, the Supreme Court of Appeals modified the question as follows:

In a case in which the plaintiffs assert an insurance contract claim for first-party underinsured motorist benefits, and a "bad faith" claim pursuant to the Unfair Claims Settlement Practices Act arising out of the contract claim, is it mandatory, under *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), for the trial court to: (1) bifurcate the claims, (2) stay trial of the "bad faith" claim, and (3) stay all discovery on the bad faith claim pending resolution of the contract claim?

*Light v. Allstate Ins. Co.,* 1998 WL 381663, at *3, 506 S.E.2d 64, 66 (W.Va. July 7, 1998). Determining that the Fourth Circuit opinion in *Maher* "incorrectly interpreted *Madden,*" the Supreme Court of Appeals answered all three prongs of the certified question in the negative. *Id.* at *5, 506 S.E.2d at 70.

The plaintiff in *Madden* had brought an action against a restaurant stemming from an alleged slip and fall incident and, by way of amended complaint, against the restaurant's insurance carrier, State Farm, for unfair settlement practices. 192 W.Va. 155, 451 S.E.2d 721, 723 n. 1. Hence, the *Madden* court was faced with a proceeding wherein a first-party action sounding in tort had been joined with a third-party action against an insurance carrier. While *Madden* clearly supports, the earlier proposition of *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981), holding that the decision to bifurcate is squarely within the sound discretion of the trial court and shall not be disturbed absent a clear showing of abuse, the *Madden* court nonetheless held that "[t]he prejudice inherent in allowing the personal injury claim against [the restaurant] to be tried before the same jury as the [unfair settlement practices] claim against State Farm ... is such that the [trial] court's refusal to bifurcate was a clear abuse of discretion." *Madden* at 726. The clear rationale behind such a finding is that a jury, knowing the judgment will be paid by an insurance company rather than the individual defendant, may be persuaded to find in plaintiff's favor for reasons more closely associated with the existence of insurance coverage than the merits of the case. *See Hewett v. Frye,* 184 W.Va. 477, 401 S.E.2d 222 (1990).

As Allstate is the named defendant in both the unfair settlement practices claim and the underlying contract claim in the action currently at bar, the concern expressed in *Madden* regarding disclosure of insurance is inapplicable. Analysis and interpretation of the insurance contract and its term as well as inquiry into Allstate's practice of claim review constitute the focal point of both causes of action so as to ensure that the jury is alert to the existence of insurance, and also quite aware from whom payment upon recovery would derive. Under a similar analysis, the Supreme Court of Appeals concluded that "*Madden* should not be extended to first-party bad faith actions against insurers" and accordingly held that "in a first party bad faith action against an insurer, bifurcation and stay of the bad faith claim from the underlying action are not mandatory." *Light* at *6, 506 S.E.2d at 70. Further, as bifurcation is not mandatory, axiomatically neither is stay of discovery pending resolution of the underlying claim.

However, as the Supreme Court of Appeals has similarly concluded, the "first-party/third-party distinction ... does not mean that bifurcation should never occur." *Id.* Rather, the trial Court may exercise its discretion, making case-by-case determinations as to whether bifurcation in a first-party bad faith action is warranted.

### DISCRETIONARY BIFURCATION

Federal Rule of Civil Procedure 42(b) governs the standards for consideration of motions to order separate trials of issues raised in a single action. Rule 42(b) authorizes district courts to order a separate trial for

any claim "in furtherance of convenience or to avoid prejudice, or when a separate trial will be conducive to expedition and economy. . . ." F.R.C.P. 42(b). It is within the Court's discretion to determine whether to grant a motion for bifurcation under Rule 42(b). *Light* at *8, 506 S.E.2d at 72. Therefore, this Court must consider the justifications for bifurcation in light of each parties' individual requests to determine if separate trials are indeed appropriate.

Allstate argues that the Court should bifurcate the Lights' bad faith claim until the disposition of the breach of contract claim. To support its demand Allstate advances three separate arguments. First, Allstate contends that bifurcation of the Lights' contract and bad faith claim would further convenience and foster judicial economy. Second, Allstate contends that if a jury considered both the UIM coverage under the policy and Allstate's claim handling procedures, Allstate would inevitably be prejudiced by jury confusion. Finally, Allstate argues that if the contract and unfair claim settlement issues were tried together, Allstate would likely be prejudiced by disqualification of trial counsel. After balancing the advantages and disadvantages of bifurcation, the Court finds that bifurcation is inappropriate in this case.

Allstate supports its first argument by citing to Justice McCuskey's lone dissenting opinion in *Light.* Justice McCuskey noted that a "compelling advantage" of bifurcation is that bifurcation increases the "incentive to settle before trial." *Light* at *8, 506 S.E.2d at 72. Although the Court recognizes Allstate's argument that the disposition of the Lights' contract claim disposes of the tortious bad faith claim, the Court, however, is unpersuaded by that argument alone to prove that bifurcation in the instant case promotes convenience and judicial efficiency.

Bifurcation of the instant action not only decreases Allstate's incentive to settle the case prior to trial, but also impedes upon swift judicial resolution and convenience. With respect to the incentive to settle, bifurcation affords Allstate, the holder of vast resources, the opportunity to go forward with this five year old action in piecemeal fashion.

Allstate would be allowed to first try the contract claim, and should defense of that claim prove fruitless, then and only then be faced with the bad faith claim. As articulated by the Lights, "bifurcation of these claims would give Allstate two bites at the apple." In addition, once an insurance carrier is faced with defending a breach of contract and bad faith claim in the same trial, the carrier's incentive to settle before trial increases for fear of having the same jury decide both claims.

The Court is also unpersuaded by Allstate's argument that bifurcation fosters judicial economy and convenience. Bifurcation might prove economical should Allstate win on the contract issue, but if Allstate does not prevail, the Court is faced with two voir dires, two phases of discovery and another round of seemingly endless motion filing and responses, all in addition to two separate trials. This can be very expensive and no doubt time consuming for all those involved. Therefore, this Court finds that judicial economy weighs on the side of a unitary trial.

Allstate further contends that commingling of the contract and bad faith claim would prejudice Allstate through jury confusion. The Court, however, finds the issues in this case to be fairly straightforward, as are the facts that give rise to those issues. The evidence expected to be adduced at trial is not so complex or overwhelming that a properly presented jury would be confused by the issues involved. Furthermore, evidence presented concerning the breach of contract claim is very likely to overlap with evidence introduced on the bad faith claim. For example, the tortious bad faith claim involves a determination of whether Allstate had a reasonable basis for denying coverage. The evidence used to support that issue would be relevant to determine whether Allstate owed coverage. Thus, bifurcation would likely lead to duplicative argument on several issues. In addition, at least one other Circuit has cautioned that a "court should not bifurcate claims unless the issue to be tried separately is so distinct and separate from the others that a trial of it alone may be had without injustice." *McDaniel v. Anheuser–Busch, Inc.,* 987 F.2d 298, 305 (5th Cir.1993). In

**214**

light of this, the Court finds that there is not a level of complexity to the evidence that would warrant presentation in two separate trials.

Finally, Allstate claims that it would be prejudiced by a unitary trial due to potential disqualification of their own trial counsel. Allstate contends that "because Allstate's counsel has worked with Allstate on the Lights' bad faith claim as well as their breach of contract claim, its current counsel is a potential witness with respect to the bad faith claim." (Defendant's Reply at 2).

Based upon the nature of the insurance industry, this potential conflict is something that Allstate should have foreseen. Further, Allstate did not raise this claim until three years after this case was filed in federal court. Initially, the Court questions Allstate's wisdom in employing its trial counsel as its settlement claim counsel, knowing there is the potential for a tortious bad faith failure to settle claim to be filed. Granting bifurcation in this case seemingly would allow Allstate to benefit from a potential conflict it created. Additionally, the delay in bringing this claim signifies to the Court the importance, or lack thereof, of this particular issue. Moreover, now that the bifurcation issue has been resolved, Allstate has ample opportunity to prepare new counsel should an actual conflict arise.

After balancing the advantages and disadvantages of bifurcating this matter and taking into consideration prejudice, convenience and judicial economy, the Court hereby finds against bifurcation.

Therefore, for the reasons stated above, it is hereby **ORDERED** that the Defendant's motion be and is hereby **DENIED.**

The clerk is directed to mail a copy of this Order to all counsel of record.