No. 17-0641 – *McElroy Coal Co. v. Schoene*

WORKMAN, C. J., dissenting in part and concurring in part:

**FILED**

**April 12, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

I concur with the majority's conclusion that a common law claim for loss of surface support does not lie under the certified question as posed by the United States Court of Appeals for the Fourth Circuit. I likewise concur with the majority's conclusion that the Surface Coal Mining and Reclamation Act, West Virginia Code § 22-3-1 (1994) *et seq.*, (hereinafter "the Act") authorizes an action for damages upon proof of a violation of the Act, as plainly set forth in subsection (f) thereof, and that the Code of State Regulations sets forth a property owner's remedy for subsidence, which alternative remedies are the elective of the property owner. I write separately, however, because I disagree with the majority's curiously obtuse refusal to reach the issues—both implicit and explicit—contained in the Fourth Circuit's certified questions regarding the operation of the various provisions of the Act's "citizen suits" provisions. Despite the Fourth Circuit's carefully framed questions inquiring as to the availability of injunctive relief, the circumstances under which damages may be awarded, and the nature of such damages, the majority opinion inexplicably avoids these issues altogether. Accordingly, I write separately to examine these issues.

In this case, petitioner McElroy Coal Company's (hereinafter "McElroy") operations caused subsidence damage to respondents Michael and Patricia Schoene's (hereinafter the "Schoenes") property. McElroy made an offer to the Schoenes in the

1

amount its expert opined would be necessary to repair the property; the Schoenes rejected it, believing that the sum did not adequately represent the cost of repair. To remedy this disagreement, the Schoenes filed suit, including a common law claim and later, a claim under the Act. Following a tangled procedural history, the case was tried resulting in an appeal to the Fourth Circuit. To resolve the appeal, the Fourth Circuit issued certified questions plainly designed to obtain clarification regarding the operation of the "citizen suit" provisions contained in Section 25 of the Act, West Virginia Code § 22-3-25 (1994).

For purposes of brevity and context, the Fourth Circuit's second certified question, plainly stated, asks whether a property owner may bring an action for subsidence damages under West Virginia Code § 22-3-25(f) or whether he or she is limited to an action "compel[ling] compliance" with the applicable statutory or regulatory provisions under West Virginia Code § 22-3-25(a). Its question includes specific references to these provisions. In response, the majority chooses to elucidate the Fourth Circuit by holding merely that a property owner is entitled to the remedies contained in state regulations. The majority ignores entirely the Fourth Circuit's inquiry about the availability and operation of an action for compliance under subsection (a). In fact, the language of subsection (a) is neither cited nor discussed anywhere in the opinion. In response to the Fourth Circuit's third question—inquiring about the *types* of damages available in an action under the Act— the majority responds by simply reaching the astoundingly self-evident conclusion that damages under the Act "refer[] to monetary compensation[.]" Nowhere does the majority

2

discuss the availability of the specific types of *property* damages and wholly ignores the Fourth Circuit's inquiry whether damages are limited to diminution in value or cost of repair.

The guidance being sought by these certified questions is borne out by the facts presented in the underlying action, none of which are dignified by the majority. The Fourth Circuit's certified questions ask simply what type of action and concomitant damages, if any, were available to the Schoenes under the facts presented. Rather than exploring the statute, the majority gives the statute and regulations a cursory read and simply reiterates their contents in response to the inquiry. The majority evades entirely the central issue of whether the Schoenes' allegations of failure to comply with the material damage correction regulations gives rise to a subsection (f) claim for violation of a rule, order, or permit. In an effort to lend a modicum of clarity to what little the majority offers, an examination of the statutory language is in order.

The Act makes two separate provisions for "citizen suits," as follows:

(a) . . . [A]ny person having an interest which is or may be adversely affected may commence a civil action in the circuit court of the county to which the surface-mining operation is located on the person's own behalf *to compel compliance with this article*:

(1) . . . *against any other person who is alleged to be in violation of any rule, order or permit issued pursuant to this article* . . . .

* * *

3

> (f)     Any person or property *who is injured through the violation by any operator of any rule, order or permit issued pursuant to this article may bring an action for damages*, including reasonable attorney and expert witness fees, in any court of competent jurisdiction. . . .

(emphasis added).  The Fourth Circuit's certified questions, therefore, necessarily seek guidance as to whether, given the disagreement about the value of repairs, the Schoenes merely have an action for compliance with the regulatory requirement that an operator repair property or pay diminution in value, or, whether they may pursue a claim for damages resulting from the subsidence.  Implicit in this inquiry is whether a disagreement about the value of repairs is tantamount to a violation of the statute or regulations.  However, the majority's inexplicable response to this complex inquiry is simply to restate the provisions of subsection (f), indicating that upon proof of a violation, an action for monetary compensation will lie.  To say that this cursory answer is less than edifying is putting it mildly.  The opinion offered by the majority tells the Fourth Circuit nothing more than what it already had available to it in the form of the bald language of the statute itself.

As is obvious from the legislative findings, the Act is an effort to "strike a careful balance between the protection of the environment and the economical mining of coal needed to meet energy requirements."  W. Va. Code § 22-3-2(a) (1994).  To do so, the Legislature mimicked the Federal Act[1] to address mining operations which "result in

---

[1] 30 U.S.C. § 1201 (1977) *et seq*. (the "Surface Mining Control and Reclamation Act")

disturbances of surface and underground areas that . . . damag[e] the property of citizens[.]" *Id.* To do so, subsidence control measures were promulgated by legislative rule. W. Va. C.S.R. § 38-2-16. These regulations require underground mine operators to adopt measures and use technology which prevents subsidence to the extent feasible and "maintain[s] the value and reasonably foreseeable use of surface lands[.]" W. Va. C.S.R. § 38-2-16.2.a.

However, in the event of "material damage," the regulations provide for remediation by way of repair or compensation. With respect to the surface land, subsection 16.2.c.1 requires an operator to "[c]orrect any material damage resulting from subsidence . . . by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence[.]" As to "structures and facilities," an operator is required to "[e]ither correct material damage resulting from subsidence . . . by repairing the damage or compensat[ing] the owner . . . in the full amount of the diminution in value resulting from the subsidence." W. Va. C.S.R. § 38-2-16.2.c.2.[2] Accordingly, the Act itself does not contemplate recovery for damages for subsidence

---

[2] *See also* Syl. Pt. 4, *Rose v. Oneida Coal Co.*, 195 W. Va. 726, 466 S.E.2d 794 (1995) ("Pursuant to the West Virginia Surface Coal Mining and Reclamation Act, W. Va. Code, 22A–3–14 (1985) [now W. Va. Code, 22–3–14 (1994) ], and 30 U.S.C. § 1266 (1977) of the federal Surface Mining Control and Reclamation Act and their accompanying regulations, the operator of an underground mine is required to correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence.").

inasmuch as the remedy for such event is addressed in the regulatory requirements. The Act represents the Legislature's attempt to balance the necessary likelihood of such damage due to mining operations with conciliatory remediation as required in its regulatory scheme.[3]

Given that subsidence is much-expected, and in the absence of a common law action for damages resulting therefrom, it is clear that a property owner is entitled to correction of subsidence damage strictly pursuant to the Code of State Regulations. This remedy is available not as "damages" in an action under the statute; it is a remedy available by *operation of law*. Therefore to the extent that the Fourth Circuit's certified questions inquire as to what remediation or compensation is available for property damage which occurs *as the result of subsidence itself,* where common law damages are unavailable, the answer is unquestionably only those remedies provided in the Code of State Regulations. It is with this foundational understanding that the operation of the "citizen suit" provisions of West Virginia Code § 25-3-25(a) and (f) come into greater focus. Given the majority's superficial to non-existent analysis of the statute's various provisions, a deeper evaluation is needed.

---

[3] In this regard, the remediation set forth in West Virginia Code of State Regulations § 38-2-16 does not purport to set forth the measure of "damages" for an action under the Act. Rather, the regulations simply mandate what is required of an operator to be in compliance with the Act. To the extent the certified question(s) suggest that damages recoverable in an action under the Act are somehow constrained by this regulation, there is no basis for such a conclusion.

In my view, the citizen suit provisions of West Virginia Code § 22-3-25 operate much as the Fourth Circuit intuited in its questions: an action *compelling compliance* with a rule, order, or permit stands in contrast to an action for damages for *violation* of a rule, order or permit. In the event of a rule, order, or permit violation, such as an alleged refusal to or an allegedly inadequate offer of repair or compensation as required under West Virginia Code of State Regulations §§ 38-2-16.2.c.1 and 2, a property owner may clearly bring an action to compel such repair or compensation pursuant to West Virginia Code § 22-3-25(a). Tracking the language of the statute, such an action "*allege*[*s*]" that the operator is "in violation of [a] rule . . . issued pursuant to this article" and is the mechanism through which a property owner compels the action required of an operator as provided by law. W. Va. Code § 22-3-25(a)(1). Should a property owner prove that he or she is entitled to enforcement of a rule, order, or permit as alleged, such action therefore may result in an order to "compel compliance[.]"[4] W. Va. Code § 22-3-25(a).

---

[4] Against the backdrop of the case at bar, this construction necessarily begs the question of whether a mere dispute about repair value is tantamount to a "violation" of the Act and whether a court or jury should become involved in determining a reasonable value for repair and/or diminution, which may differ both from the amount being offered by the operator and the amount being demanded by the property owner. In the case at bar, upon the issue being submitted to the jury, it returned a figure for repair somewhere between the two parties' respective positions.

The majority side-steps this issue by stating simply that whether a violation was proven is not a question properly before the Court. In fairness to the majority, the certified questions presented did not squarely posit this query. However, in fairness to the certifying court, this Court historically does not hesitate to reformulate a certified question when necessary to fully address critical issues fairly raised therein. *See* Syl. Pt. 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993) ("When a certified question is not

7

By way of monetary relief, only those additional sums made available under subsection (d) are specially awarded: "The court in issuing any final order in any action brought pursuant to subsection (a) of this section may award costs of litigation, including reasonable attorney and expert witness fees, to any party whenever the court determines such award is appropriate." W. Va. Code § 22-3-25(d). Subsection (d) makes no provision for an award of special or general damages inasmuch as an action under subsection (a) is injunctive and/or declaratory in nature and is simply for the purpose of enforcing those remedies or actions which are already required pursuant to regulation, an order or permit. *See* W. Va. Code § 22-3-25(d) ("The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security.").

---

framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it . . . ."); *see, e.g., Landis v. Hearthmark, LLC*, 232 W. Va. 64, 70 n.9, 750 S.E.2d 280, 286 n.9 (2013) (reformulating certified question from United States District Court to "focus solely on the key issue").

Resolution of this issue requires a practical approach. Obviously, to compel compliance with the regulation, a determination as to the reasonable repairs or compensation required must first be made. The statute appears to anticipate the use of expert testimony to reach such a determination: "The court in issuing any final order in any action brought pursuant to subsection (a) of this section may award costs of litigation, including reasonable attorney and *expert witness fees*, to any party whenever the court determines such award is appropriate." W. Va. Code § 22-3-25(d) (emphasis added). Moreover, the statute appears to anticipate a situation where there is no "clear" victor, permitting reasonable fees "whenever the court determines such award is appropriate." *Id.* This provision therefore appears to envisage the potential for both genuine, good faith disputes and situations where the nature of the dispute or a party's conduct justifies an award of fees. Accordingly, it would seem inequitable to summarily conclude that the resolution of a valuation dispute necessarily dictates whether a violation has occurred.

In contrast, when the *violation* of a rule, order, or permit *itself* causes damages to "person or property," the Act provides for an action for damages in subsection (f). As discussed, this subsection does not contemplate personal or property damage caused by the subsidence itself, given that subsidence is contemplated under the Act and remedies are made available therefor in the Code of State Regulations. Rather, it allows for damages which are *caused by the violation* of a rule, order, or permit itself. In the event, such as the case at bar, of an operator which is determined to have failed to repair or compensate a property owner for subsidence as required by West Virginia Code of State Regulations §§ 33-2-16.2.c.1 and 2, damages *occasioned by that failure* are recoverable, whether they be personal or property damages.[5]

Finally, despite the majority's bizarre refusal to articulate the types of damages recoverable in an action under subsection (f)—with the exception of annoyance and inconvenience—it seems clear that the absence of restrictive language in the statute

---

[5] Such a scheme is akin to that employed in "bad faith" actions, which contemplates recovery not for the underlying injuries or damages giving rise to the insurance claim, but those damages resulting from the "bad faith" itself. *See, e.g.,* Syl. Pt., 1, in part, *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W. Va. 323, 324, 352 S.E.2d 73, 74 (1986) (allowing recovery of attorney fees and "damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience" where insured substantially prevails against insurer); *Jenkins v. J. C. Penney Cas. Ins. Co.*, 167 W. Va. 597, 609 n.12, 280 S.E.2d 252, 259 n.12 (1981), *overruled on other grounds by State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W. Va. 155, 451 S.E.2d 721 (1994) (explaining that damages resulting from unfair insurance claim settlement practices "obviously does not serve to replicate the damages obtained in the underlying claim" but that "increased costs and expenses including the increase in attorney's fees resulting from the failure to offer a prompt fair settlement" is recoverable).

suggests that "damages" are those afforded by common law for injury to "[p]erson or property." W. Va. Code § 22-3-25(f). The critical distinction which must be made at the trial court level, however, is the differentiation between those damages caused by the subsidence, and those caused by the violation of the rule, order, or permit. While this Court has recognized the availability of a wide range of damages for injury to residential real property, *see Brooks v. City of Huntington,* 234 W.Va. 607, 768 S.E.2d 97 (2014), only those damages which are causally related to the violation are recoverable under subsection (f) of the Act. Moreover, as the majority casually notes, but fails to fully examine, the statute provides for injury to "*person* or property," opening up a gamut of potentially available categories of damages which do not relate strictly to property damage. W. Va. Code § 22-3-25(f) (emphasis added).

The issues presented herein are of critical importance, not only to the litigants in the case at bar, but to the citizens of the State and the coal industry as a whole. The cursory treatment afforded by the majority provides little to no guidance to the citizenry or industry, much less the certifying court. While I concur in the holdings set forth by the majority—in large part because they are of such breadth as to render them fairly inarguable—I dissent to the majority's unsatisfying and inadequate treatment of the certified questions presented.